STATE ex rel. NULL, Plaintiff, v. POLLEY, SECRETARY
OF STATE, Defendant.

(138 N. W. 300.)

1.  **Judges—Supreme Court Judges—Interest in Subject of Contro-
versy—Disqualification—Rule of Necessity in Sitting.**

The rule that a judge may not sit in a case in which he is
interested is subject to the demands of necessity, and, **held,**
that the Supreme Court must hear an application for a writ of
prohibition to the Secretary of State to prevent him from cer-
tifying to the various county auditors the names of candi-
dates for the position of judges of the Supreme Court, to be
voted for at the approaching general election, on the ground
of invalidity of the law under which the election is to be held,
though three of the five judges composing the Court may have
their terms of office extended as the result of the Court's de-
cision, and one of them is a candidate for re-election, since
refusal to hear the application would leave relator without any
forum in which he could be heard; there being no provision
of the Constitution nor any law providing for calling in of a
judge of another court, or member of the bar, to act in place
of a disqualified member of the Supreme Court.

2.  **Constitutional Law—Elections—Supreme Court Judges—Time of
Election—Legislative Power, When Exhausted.**

Const., Art. 26, Sec. 19 (Schedule and Ordinance), providing
that judges of the Supreme and Circuit Courts shall hold their
offices until first Tuesday after first Monday in January, 1894,
and until their successors are elected and qualified, "subject
to the provisions of Section 26, Art. 5 of the Constitution,"
and Art. 5, Sec. 26, providing that the Legislature may pro-
vide for the election of judges on a different date from that
on which an election is held for any other purpose, and, for
the purpose of making such provisions, may extend or abridge
the term of office for any such judges then holding, but not
for more than six months, and which, in a preceding clause,
provides that judges of the Supreme Court, circuit courts and
county courts shall be chosen at the first election held under
the provisions of the Constitution, "and thereafter as provided
by law," **held,** to grant a continuing power in the Legislature
to determine when judicial elections shall be held, and such
power was not exhausted by enactment of Laws 1893, Ch. 84,
authorizing the then next judicial election to be held in No-
vember, 1893, and every six years thereafter, but at a time
in November other than that at which general elections were
held.  **Held,** further, that the purpose of the clause of said
Sec. 26 empowering the Legislature to extend or abridge the

term of office for judges, was not to authorize the fixing of the date of judicial elections, but to authorize the Legislature to so lengthen or shorten a term as an incident to and in order to accomplish the purpose of fixing a particular date for judicial elections.

3. **Statutes—Construction—Legislative Intent.**

It is the duty of courts, if possible, to ascertain and give effect to the intent and purpose existing in the legislative mind.

4. **Constitutional Law—Judges—Elections—Successive Legislative Acts—Changing Tenure of Office, Immaterial Issue.**

Const., Art. 5, Sec. 26, authorizes Legislature to provide for election of judges on a different day from any other election, and for that purpose authorizes it to extend or abridge the term of any judges then holding office, but not for more than six months. Laws 1893, Ch. 84, required the holding of the next judicial election in November of that year, and at a different time from that at which general elections were held. Laws 1901, Ch. 118, provided that at the general election of 1904, the Judges of the Supreme Court should be chosen for the term next succeeding that for which such Judges were then serving, that the terms of the Judges elected in 1899, and the terms of their successors, should each be six years and six months, and that the election of such Judges thereafter should be held at the general election next preceding the expiration of their respective terms of office. **Held,** that the enactment of 1901 was constitutional, and that it was the purpose and intent of the Legislature thereby to provide for a judicial election to be held at the general election in 1912; and that, in determining this question, it is immaterial whether the extension of the terms of judges was within the legislative power or not, since that provision was merely incidental to the fixing of the time of the judicial election, and should only be considered, in this connection, as an existing means in determining when the election was ordered to be held; and that the Legislature's power to so fix the time for such elections is unlimited by any provision in the Constitution.

(Opinion filed October 25, 1912.)

Proceedings by the State, on the relation of T. H. Null, by prohibition, to restrain Samuel C. Polley, Secretary of State, from certifying the nomination of candidates for the office of Judge of the Supreme Court. Demurrer to petition sustained, and motion to quash the proceeding is granted.

*Null & Royhl,* for Plaintiff.

*Royal C. Johnson,* Attorney General, and *Perry F. Loucks,* for Defendant.

(1) Under point one of the opinion Defendant cited:  National Bank v. McGuire, (S. D.) 80 N. W. 1074; Friedel v. Nell, (Ark. 1912) 146 S. W. 494; State v. Hamm, (S. D.) 124 N. W. 955; (Note) 12 Current Law, 405; 52 Pac. 317 (Wash.); 72 N. Y. pages 10 to 17; Jarreau v. Chappin, 6 La. 134; State v. Grane, 36 N. J. L. 394; Wilcox v. Supreme Council, 123 N. Y. Supp. 83.

(2) Under point two of the opinion, Plaintiff cited:  Const., Art. 26, Sec. 19; Art. 5, Sec. 26; Art. 5, Sec. 8; Hamilton v. Krez, 88 Wis. 135; Eldred v. Palmer, 154 N. Y. 133; State v. Arlington, 18 Nev. 133, 4 Pac. 735; Mecham on Public Officers, Sec. 387, and cases cited in notes; 29 Cyc. page 1396 and cases cited in notes; State v. Plastus, 105 N. W. 1902; Laws 1893; Ch. 84; State v. Gardner, 3 S. D. 553.

Defendant cited:  In re Construction of Constitution, 3 S. D. 552; State v. Gardner, 3 S. D. 558; In re Supreme Court Vacancy, 4 S. D. 532; Jones v. Roberts County, (S. D.) 131 N. W. 863; Haggerty v. Arnold, 13 Kans. 367; State v. Bailey, (Minn.) 33 N. W. 778; Wayte v. Glasgow, (Va.) 55 S. E. 536; 15 Cyc. 343; State v. Menaugh, (Ind.) 51 N. E. 117 and rehearing 357, 43 L. R. A. 408; Larned v. Elliott, (Ind.) 57 N. E. 901; In re House Bill No. 38, (Colo.) 21 Pac. 474; Wilson v. Clark, Secretary of State, (Kans.) 65 Pac. 705; State v. Cumpson, (Ore.) 54 Pac. 348; Sprague v. Brown, 40 Wis. 612; People v. Supervisors, 100 Ill. 495; State v. McGovney, (Mo.) 3 S. W. 867; State v. McCracken, (Ohio) 36 N. E. 941.

SMITH, J.   Order to show cause why a writ of prohibition should not issue restraining defendant as Secretary of State from certifying to the county auditors of the several counties in the state, the nomination of candidates for the office of supreme judge to be voted for at the general election to be held in November, 1912.   The Attorney General, Royal C. Johnson, consents to, and in effect joints in, the application for the writ in behalf of the state of South Dakota, on the ground that the questions involved are of great public interest and importance.   The writ was returnable on the 16th day of September, 1912, at which time defendant Polley, as Secretary of State, appeared by the Attorney General and Perry F. Loucks, his counsel, and filed objections to further proceedings herein, and a motion to dismiss the same, and

to vacate and discharge the order to show cause, upon the ground that three of the judges of this court, namely, Judges Corson, Haney, and Whiting are directly interested in the determination, for the reason that they are incumbents of the office of judge of the Supreme Court, that their current terms of office may be extended by the effect of the decision, and that Judge Whiting is the Republican nominee for re-election.

[1] The objection thus interposed that a majority of the judges of this court are disqualified to act in this proceeding presents a question embarrassing in its nature, but which must be decided and determined in this proceeding. It is elementary that no man may sit in judgment upon his own cause, and no citation of authorities is necessary to demonstrate the law. It is, however, almost universally held that the rule is one which must yield to necessity. In 23 Cyc. 581 (f), it is said: "The rule as to disqualification of judges must yield to the demands of necessity, where disqualification, if permitted to pervail, destroys the only tribunal in which relief may be sought and thus effectually bars the door of justice. The disqualified judge is bound to hear and decide the cause." The same rule is stated in 17 Am. & Eng. Enc. of Law (2d Ed.) 744 (6b).

It was suggested in argument by defendant's counsel that the rule as stated in 23 Cyc. supra, is not sustained by the authorities there cited. In this contention defendant's counsel are in error. In the recent case of Galey v. Board of Commissioners, 174 Ind. 181, 91 N. E. 593, Ann. Cas. 1912C, 1099, the Supreme Court of Indiana adopted and laid down the rule as stated in Philadelphia v. Fox, 64 Pa. 170, where the court, speaking by Mr. Justice Sharswood, says: "The true rule undoubtedly is that whenever it becomes necessary for a judge to sit, even where he has an interest, where no provision is made for calling another in, and where no one else can take his place, it is his duty to hear and decide, however disagreeable it may be. Matter of Ryers, 72 N. Y. 1, 28 Am. Rep. 88." In State ex rel. Cook et al. v. Houser, Secretary of State, 122 Wis. 534, 100 N. W. 964, the court held as stated in the syllabus: "All common-law rules as to the disqualification of judges give way to the stern rule of necessity, permitting one to act judicially, though he would be disqualified otherwise, if, were he not to act, there would be no

tribunal to furnish a remedy for the case in hand." In Bliss v. Caille Bros. Co., 149 Mich. 601, 113 N. W. 317, 12 Ann. Cas. 513, the court says: "It is well established that the rule of disqualification of judges must yield to the demands of necessity, as, for example, in cases where applied, it would destroy the only tribunal in which relief could be had. See cases collected in 23 Cyc. 581, note 76." In Philadelphia v. Fox, supra, Justice Sharswood says: "My brother Hare and mysef were both members of the society, and would gladly have excused ourselves from taking any part in the decision, but it was impossible. Without one of us, at least, there could have been no court. We heard and tried the case in favor of the society, and that judgment was affirmed by this court. * * * The true rule unquestionably is that wherever it becomes necessary for a judge to sit, even where he has an interest, where no provision is made for calling another in or where no one else can take his place, it is his duty to hear and decide, however disagreeable it may be. The rights of the other parties require it." The same rule obtains in the English courts. Dimes v. Grand Junction R. R., 3 H. of L. Cases, 759; Thelluson v. Rendlesham, 7 H. of L. Cases, 429; 11 Eng. Reprint, 172. Decisions of other states might be cited sustaining the rule as stated above, but we deem it unnecessary. The objection to the qualification of three of the judges of this court to act in this case, if sustained, would disqualify a majority of the court. Section 7, art. 5, of the Constitution of this state declares: "A majority of the judges of the Supreme Court shall be necessary to form a quorum, or to pronounce a decision, but one or more of said judges may adjourn the court from day to day or to a day certain." If three of the judges of this court are disqualified, the remaining two are powerless to pronounce a decision upon the rights of the parties in this case. Neither the Constitution nor any law of this state provides for the calling in of a judge of another court or member of the bar to act in the place of a disqualified member of this court. A clearer case of absolute necessity on the part of the judges to act could hardly be conceived. Under any other rule, the parties to this controversy would be without a forum in which their respective rights could be determined. Every circuit judge of the state is equally interested with the members of this court in the question of pending judicial elections. In view

of the conclusion reached, the question under discussion becomes of little importance to the defendant who enters the objection. But, even if our conclusion had been the reverse, the rule of necessity would have been the same, and we should have felt compelled to disregard the objections and render a decision. Had we declined to act in such case, plaintiff would have been without a remedy, and defendant, whether his proposed acts were legal or illegal, would be out of reach of the law, and would be a law unto himself. In such cases the rule of disqualification of judges is deemed of less importance than the denial of the constitutional right to a forum in which rights may be adjudicated. And, however, embarrassing the situation may be to us, we are unanimously of opinion that this court should not abdicate its functions and duties in any case, where such action would, in effect, deprive the citizen of his constitutional rights.

[2] The only question presented upon the merits is whether a judicial election should be held under the Constitution and laws of this state in the month of November, 1912. It is plaintiff's contention that ,under the Constitution of this state, no judicial election can be held except at a time provided by legislative enactment, and this court so held in State ex rel. McGee v. Gardner, 3 S. D. 553, 54 N. W. 606. Section 24 of the Enabling Act provides: "That the constitutional conventions may by ordinance provide for the election of officers for full state governments including members of the Legislatures and Representatives in the Fifty-First Congress * * * and when such state has been admitted into the Union * * * the officers of the state government framed in pursuance of said Constitutions * * * shall proceed to exercise all the functions of state officers." Section 19, art. 26, of the Schedule and Ordinance adopted by the constitutional convention, provides: "The judges of the Supreme Court and circuit courts shall hold their offices until the first Tuesday after the first Monday in January A. D. 1894, at 12 o'clock m. and until their successors are elected and qualified, subject to the provisions of sec. 26 of art. 5 of the Constitution." Section 26, art. 5, of the Constitution provides: "Judges of the Supreme Court, circuit courts and county courts shall be chosen at the first election held under the provisions of this Constitution, and thereafter, as provided by law, and the Legislature may provide for

the election of such officers on a different day from that on which an election is held for any other purpose and may for the purpose of making such provisions; extend or abridge the term of office for any of such judges then holding, but not in any case more than six months." Plaintiff's counsel contends that section 19, art. 26, of the Schedule and Ordinance, relates exclusively to the terms of officers chosen at the first election under the Constitution; that this first term of judicial office alone is subject to the provisions of section 26, which provides that the Legislature may "extend or abridge the term of office for any of such judges then holding, but not in any case for more than six months," and should be held to confer upon the Legislature constitutional authority to extend or abridge the term of office of the judges chosen at the first election held under the Constitution, and none others. Counsel further contends that ,after the expiration of the terms of the first judges elected under the Constitution, the Legislature was without power to act under this clause of the Constitution, and that the terms of office of judges thereafter elected can neither be extended nor abridged by legislative enactment. The decision of this court in State ex rel. McGee v. Gardner, supra, was handed down February 24, 1893, in which it was held that, until the Legislature had made provision for judicial election none could be legally held. Thereupon the legislative assembly, being then in session, enacted chapter 84, Laws of 1893, approved March 4, 1893, authorizing the next judicial election to be held in November, 1893, and every six years thereafter, and providing that the judges so elected should qualify and enter upon their duties in January, 1894. This enactment fixing the time of judicial elections did not attempt to extend or abridge judicial terms of office, but the act did fix the judicial election at a time other than that on which general elections were held in the state. It appears to be counsel's contention that the Legislature, having once acted under this provision of the Constitution authorizing the fixing of the judicial election at a time other than the general election, the specific legislative power thus granted has been exhausted, and may not again be exercised. In this we think counsel are clearly in error. The rule that a constitutional term of office may neither be extended nor abridge by legislative enactment must be presumed to have been known and acted upon by the constitutional conven-

tion itself. The constitutional convention in its wisdom saw fit to authorize a specific departure from this rule to accomplish a specific purpose named.

The particular thing the Legislature could not have done without this authority was to extend or abridge the constitutional term of judicial office, and it is clear to our minds that the purpose of the latter clause of section 26, art. 5, was not to authorize the fixing of the date of judicial elections, but to authorize the Legislature to lengthen or shorten a judicial term, should they deem it expedient so to do, to accomplish the purpose of fixing a date for judicial elections different from that on which an election is held for any other purpose. The preceding portion of section 26, art. 5, prescribes the time of judicial election as "the first election held under the provisions of this Constitution," and thereafter, "as provided by law * * *" as provided in the following clauses of this section. The power to "provide by law," and to determine when judicial elections shall be held, is thus vested in the Legislature with no limitations except such as may be found in the Constitution itself, and we find none. It follows that the power to fix the time of judicial elections is a continuing one, and may be exercised as in the wisdom of the Legislature may seem best for the public good.

[3, 4] In an attempted exercise of this power, the Legislature enacted chapter 118, Laws of 1901, which provides: "Sec. 1. At the general election in 1904, the judges of the Supreme Court and circuit courts shall be chosen for the term next succeeding the term for which the said judges are then serving. The term of the supreme judges elected in 1899 shall be six years and six months, and the term of their successors shall be six years and six months * * * and the election of the supreme * * * judges thereafter, shall be held at the time of the general election next preceding the expiration of their respective terms of office. * * *" It is plaintiff's contention that this act is unconstitutional, in that it attempts to fix the terms of the judges then serving and of their successors to be elected at the election to be held in 1904, each as six years and six months. It seems clear to our minds that the main purpose of this enactment was to fix the date of judicial elections thereafter to be held, and the attempted extension of the constitutional term of office was incidental to that purpose. That

the Legislature intended to fix a date for judicial elections is apparent beyond controversy. It is the duty of the court, if possible, to ascertain and give effect to the intent and purpose existing in the legislative mind. At what time, and in what year, did the legislative assembly understand and intend that judicial elections should be held? In seeking to ascertain this thought and this purpose, it seems to us wholly immaterial whether that part of the act attempting to extend the constitutional term to six years and six months be held constitutional or unconstitutional. The two periods of six years and six months each may at least serve to fix and to ascertain and determine the particular year in which the Legislature understood and declared that such election should be held. This legislative enactment declares, in effect, that 13 years after the election of 1899 a judicial election shall be held, with an intervening election to be held in 1904. And, even conceding that the Legislature is without power to enlarge the constitutional term of office, the result is the same. The members of the court elected in 1899 have served for six years and six months. Their successors who were duly elected in 1904 have served six years, and are legal incumbents of the office, whose places can in no event be filled, except at a judicial election provided by law. It follows that the question of the constitutionality of those provisions of the act which attempt to extend the terms of office becomes wholly immaterial, and need not be further considered in this case. We are firmly persuaded that by this enactment it was the purpose and intent of the Legislature to provide for a judicial election to be held at the general election in 1912.

For the reasons stated, the demurrer to the petition is sustained, and the motion to quash the proceeding is granted.