VERNON SHIBLA, PROSECUTOR, v. TOWNSHIP COMMITTEE OF THE TOWNSHIP OF WALL, IN THE COUNTY OF MONMOUTH, DEFENDANT.

Argued October 8, 1947—Decided January 20, 1948.

Before Justices BODINE, HEHER and WACHENFELD.

For the prosecutor, *Parsons, Labrecque, Canzona & Combs* (*Theodore D. Parsons, Theodore J. Labrecque* and *Thomas L. Hanson,* of counsel).

For the defendant, *Allon V. Evans.*

The opinion of the court was delivered by

HEHER, J. *Certiorari* was granted to review prosecutor's ouster, on July 12th, 1947, from the office of chief of police of the defendant municipality. After a hearing, the Township Committee found him guilty of five specifications of misconduct (Nos. 2, 3, 4, 6, 10) ; and there was also a finding (Charge 1) that at the time of his appointment to the office in question he "was over the age limit prescribed by the statute," and therefore the original appointment was void *ab initio.* Four additional specifications of misbehavior were

dismissed. Prosecutor was suspended from office prior to the presentation of the charges; and the suspension continued until his ouster.

Prosecutor is an honorably discharged veteran of World War I; and he invokes the protection of the War Veterans and Police Tenure of Office Acts. *R. S.* 38:16–1, 40:47–6.

But it is the insistence of the township that it had the right under the statute pertaining to townships (*Pamph. L.* 1899, *pp.* 372, 395, as supplemented by chapter 99 of the laws of 1918; *R. S.* 40:149–1, 40:149–2) "to dismiss the prosecutor at will until it established its police department in 1942, and thereafter because of his age." The act provides that the governing body of any township "wherein no police department has been established may appoint one or more suitable persons resident therein, or any constable of the county * * *, as police officers," subject to dismissal "at the will" of the governing body, at compensation to be fixed by ordinance or resolution. The specific contention is that, while prosecutor was appointed "chief of police" of the township on January 25th, 1928, and has continually served as such ever since, the local "police department" was not "established" until 1942, when prosecutor was 47 years of age, and under *R. S.* 40:47–4, as amended in 1939 (*Pamph. L., p.* 765), he was ineligible for appointment as a member of the police force, having passed the age of 35 years, and thus he has no title to the office.

Even so, prosecutor was a *de facto* officer; and this court has held that statutes of this nature make no distinction between officers *de facto* and officers *de jure,* and their protection extends to both classes, and the officer's ineligibility at the time of his appointment is not a ground for removal. Ouster is accomplished by *quo warranto*. *Magner* v. *Yore*, 75 *N. J. L.* 198. In a proceeding such as this, the title of the possessor of the office is ordinarily presumed valid. *Loper* v. *Millville,* 53 *Id.* 362. And, if we regard the action taken as a mere declaration of a vacancy in the office for ineligibility rendering the appointment void (*vide Loper* v. *Millville, supra*), it is not sustainable; for in our view a police department within statutory intendment was established in 1931,

when the township committee adopted an ordinance reciting that the township "has no recognized head of the public safety or police chief to whom the state police and others may call in such cases as would require the services of an authorized person," and providing that "for the better protection and suppression of crime and disorder" in the municipality, "some fit person shall be employed to act as police chief, under the direction of the Township Committee," at a fixed salary, payable monthly. Thus, there was created a department of public safety and police to meet the demonstrated need for a local police authority, consisting at the outset of a police chief subject to the direction of the governing body—an institution in keeping with the statutory concept. Compare *Moore* v. *Borough of Bradley Beach,* 87 *Id.* 391; *Travaline* v. *Paulsboro,* 121 *Id.* 453. Thereby, there came into being a distinct division or branch of municipal administration—an appointed sphere for the exercise of this portion of the police function. The determinative is not the number of the personnel, but rather the quality of the authority conferred. That such was the intent of the local governing body is made clear by the nature of the need found to exist, and the use of an ordinance to serve the need. The 1942 ordinance, however worded, simply enlarged the department to meet growing responsibilities.

In this view, the annual appointments for the calendar year were ineffective to defeat the operation of the Tenure of Office Acts. *Stewart* v. *Freeholders of Hudson,* 61 *N. J. L.* 117; *Travaline* v. *Paulsboro, supra.*

We come now to the charges of misbehavior.

It is urged that two of the three members of the Township Committee were biased and prejudiced against prosecutor, and had formed an opinion adverse to him before the specifications of misconduct had been presented, and so his challenges directed to their qualifications were erroneously overruled, and he was not accorded a fair trial.

If these challenges had been sustained, the only tribunal having jurisdiction of the subject-matter would have been disqualified; and such cases ordinarily constitute an exception to the rule that excludes one so conditioned from the

exercise of the judicial function. *Vide West Jersey Traction Co.* v. *Board of Works,* 56 *N. J. L.* 431. The exception is a rule of policy grounded in necessity. But we have no occasion to consider whether the case in hand is within the exception; for *R. S.* 2:81–8 enjoins this court, in a case of this class, to appraise the proofs anew and make an independent determination of the facts, and thus to avoid injustice.

We have reviewed the evidence in the exercise of this statutory fact-finding function, and have come to the conclusion that the burden of proof has not been sustained.

The specifications found proved do not involve departmental rules or regulations, for there were none such; and so the inquiry is whether the challenged conduct was inherently wrongful affecting prosecutor's qualifications and fitness for the office or a plain and obvious failure of duty. It is alleged (Charge 2) that certain personal telephone toll calls, ten in number, made by prosecutor and therefore chargeable to him, were, through his connivance, paid by the municipality, and thereby a fraud was perpetrated. The background has some importance in the resolution of this issue. Prosecutor's residence has been the township police headquarters ever since his initial appointment as police chief in 1928; and until 1936, the telephone in his home and his automobile were used for police business without expense to the township. In the latter year, the township assumed the cost of the telephone, and thereafter the listing was in the names of prosecutor and the township. The toll calls in question covered the period from May 5th, 1946, to March 9th, 1947. The circumstances do not reasonably give rise to the inference of a dishonest motive. There was no attempt at concealment of the nature of these toll calls. The telephone company forwarded the bills directly to the municipal clerk, but not at prosecutor's direction, as affirmed in the charge. The clerk was aware of the personal character of the items in question; and he called the governing body's attention to them upon the submission of the bills for payment, and payment was directed with knowledge of the fact. At the outset, prosecutor tendered himself ready and willing to pay the items chargeable to him, and repeatedly made offers of payment thereafter,

with no response from the municipality. This specification of misconduct followed a change in the personnel of the governing body, and came even after prosecutor had directed attention to his repeated offers of payment and had again tendered payment of the items. There was no evidence whatever of an intent to cheat and defraud.

Specifications 3, 4 and 6 charge failure to prosecute one Holloway for alleged violations of the Motor Vehicle Act involved in a collision between his own automobile and another. But prosecutor did not witness the occurrence; and we are convinced that, under all the circumstances, he exercised an honest judgment, wholly free of culpable carelessness, and is therefore not subject to discipline on that score. *Vide* *Mullen* v. *Ziegener,* 134 *N. J. L.* 207.

Lastly, it is charged (No. 10) that on several occasions in 1942, prosecutor "conspired to have checks made payable" by the township "to the order of" his son James, who was not in the employ of the township, "for the sum of $24 each and endorsed" by his son "and then endorsed" by himself, for payment ultimately to one who had rendered adequate service to the township, and that this was "improper procedure," and it was "improper and misconduct" for the prosecutor "to join in this transaction, regardless of how legitimate it may be," and was "out of order."

The charge is not substantiated by the evidence. Prosecutor was president of the Township First Aid Squad, a municipal agency, serving without compensation. When war came, the activities of this organization were greatly expanded, and its usual annual appropriation was soon exhausted. It was found prudent to employ a person to attend to telephone calls directed to the agency; and, in order to provide compensation for this service, the Township Committee diverted money from other unexpended appropriations, and arranged to have the checks for the compensation made payable to prosecutor's son and the proceeds turned over to the person who had rendered the service. It is admitted that this course was pursued in every instance, and that all the money was received by the person who had earned it, and none of it came either to the prosecutor or his son, and neither was actuated

by a dishonest motive. While this course was irregular, and no doubt an evasion of budgetary restrictions, it was a device adopted by the governing body to make funds available for what it considered a legitimate need; and there is no reason to doubt that prosecutor was an innocent participant, carrying out what he conceived to be a proper function of the governing body. He has a long record of faithful and conscientious service in his police post, unmarred by prior allegations of misbehavior; and it would not serve the statutory policy to hold that he had thus been guilty of misconduct warranting disciplinary action. He is not versed in the law relating to the financial operations of municipalities; and his conduct is to be assessed accordingly. He was, after all, a policeman; and we cannot, in the application of the statutory policy hold him to a standard of conduct and accountability not in keeping with his knowledge and his usual responsibilities as a police officer. The statute subjecting him to discipline for misbehavior is to have a reasonable interpretation. There is no proof that he knew, or had reason to suspect, that his son had made a false affidavit of personal service; indeed, we find no evidence that such an affidavit was in fact made. The vouchers were handled by the local financial officers. There is no evidence of the conspiracy charged.

The judgment is reversed, with costs.