LOUIS FRANK, PROSECUTOR, v. JUVENILE AND DOMESTIC RELATIONS COURT OF THE COUNTY OF ESSEX, HARRY W. LINDEMAN, JUDGE OF THE COURT, AND ANNA FRANK, DEFENDANTS.

Submitted October 31, 1947—Decided April 20, 1948.

Before Justices Bodine, Heher and Wachenfeld.

For the prosecutor, *Charles M. Grosman.*

For the defendants Juvenile and Domestic Relations Court and Harry W. Lindeman, Judge, *Arthur T. Vanderbilt* (*G. Dixon Speakman,* of counsel).

For the defendant Anna Frank, *Michael Breitkopf* (*Joseph Siegler,* of counsel).

The opinion of the court was delivered by

Heher, J.   *Certiorari* was granted to review an order made by the Juvenile and Domestic Relations Court of the County of Essex on June 16th, 1947, adjudging prosecutor "guilty of constructive desertion" and his wife as "apt to become a public charge," and directing the payment of $15 per week for her support.  The order recites that prosecutor was tried on a complaint made by his wife under *R. S.* 9 :6–1, *et seq., R. S.* 9 :18–14 and *R. S.* 44 :1–1, *et seq.,* charging him "with abandoning, abusing, deserting or wilfully refusing or neglecting to support his family."  The complaint, however, makes no mention of *section* 9 :6–1.  It alleges that prosecutor "has refused and failed to provide adequate support and maintenance of his family,  *  *  *  in that for the past several weeks" he "has failed to support his wife contrary to" *R. S.* 9 :18–1, *et seq., R. S.* 44 :1–1, *et seq., R. S.* 2 :204–1, *et seq.,* and *R. S.* 2 :205–1, *et seq.*

It is said that chapter 77 of the laws of 1946 (*Pamph. L., p.* 267), amending *R. S.* 9 :18–14, *supra,* was designed to confer upon the Domestic Relations Courts concurrent jurisdiction with Chancery "in matters of support and maintenance of a wife," and to that extent constitutes an impairment of the exclusive jurisdiction of Chancery at the time of the adoption of the Constitution of 1844, and so exceeds the bounds of constitutional limitations.  We think not.

The subject-matter of the cited statute was not within the exclusive inherent jurisdiction of equity prior to the adoption of the Constitution of 1844.  As early as 1799, justices

of the peace were given a summary jurisdiction in cases where a husband defaulted in the performance of the obligation to support his family. The power was amplified in 1864. *Rev.* 1821, *p.* 473; *Nixon's Elmer's Digest* (*4th ed.*) 1007, 1008. This jurisdiction was transferred to the Domestic Relations Courts upon their creation in 1929; and it has since reposed there without question. *Pamph. L.* 1929, *p.* 274; *R. S.* 9:18–4, *et seq.* In 1794, our Chancery for the first time was invested by the Council and General Assembly with jurisdiction over divorces and alimony and the maintenance of children as an incident thereto, subjects until then within the exclusive province of the ecclesiastical courts. *Paterson's Laws,* 143; *Harris* v. *Vanderveer's Executor,* 21 *N. J. Eq.* 424, 432. And jurisdiction to award separate maintenance in cases of abandonment and refusal or neglect of support was not granted to Chancery until the year 1818. *Pamph. L., p.* 20; *Lynde* v. *Lynde,* 64 *N. J. Eq.* 736, 752. The amendment of 1946 cited *supra* empowered the Domestic Relations Courts to provide "adequate" support and maintenance of "the spouse, child, children or the entire family," and thus enlarged the pre-existing jurisdiction. *Vide Hiers* v. *Hiers,* 132 *Id.* 610. Alimony, in its origin, was the method by which the spiritual courts of England enforced the duty of support owed by the husband to the wife "during such times as they were legally separated pending the marriage relation." *Lynde* v. *Lynde, supra.*

Only the inherent powers of our constitutional courts as they existed in their English prototypes were saved from alteration by article VI, section I and article X, section I of the Constitution of 1844. It is the essential nature or jurisdiction of the constitutional courts that was thereby rendered indestructible and unalterable in the legislative forum. The functions and powers thus safeguarded are those inherent in the constitution of the court itself. *Harris* v. *Vanderveer's Executor, supra; Jersey City* v. *Lembeck,* 31 *N. J. Eq.* 255; *Traphagen* v. *Township of West Hoboken,* 39 *N. J. L.* 232; *Hedden* v. *Hand,* 90 *N. J. Eq.* 583; *State Board of Milk Control* v. *Newark Milk Co.,* 118 *Id.* 504, 514. Under the Constitution of 1844, the legislature did not have the com-

petency to change the nature of the constitutional courts "either by direct abridgment of [their] original power or by weakening [their] authority by lodging it co-ordinarily [co-ordinately] in some other tribunal;" the inquiry is whether the legislative rule effected an "inherent essential change in the judicial constitution that" the particular court "inherited from its English protoype." *Flanigan* v. *Guggenheim Smelting Co.,* 63 *N. J. L.* 647, 653, 654. It was not the intent of the cited constitutional guaranty to fix absolutely Chancery's pre-existing statutory jurisdiction over matters of support and maintenance, and thus to preclude the vesting in statutory tribunals of the jurisdiction here invoked—a jurisdiction primarily designed to protect the public from the burdens arising from the non-fulfillment of family obligations of support and maintenance. *Hiers* v. *Hiers, supra; Van Keegan* v. *Juvenile and Domestic Relations Court of the County of Bergen,* 132 *Id.* 21. In *Harris* v. *Vanderveer's Executor, supra* (at *p.* 447), Mr. Justice Van Syckel said: "The Prerogative Court in this state owes the finality of its decrees, neither to its peculiar organism, nor to constitutional provision, but wholly to legislative enactment (*Rev. Laws* 776); and there is therefore nothing in that attribute of the court which inhibits legislative interference."

But none of the statutes invoked to sustain the judgment either defines "constructive desertion" or sanctions the exertion of jurisdiction by the Domestic Relations Courts on proof of a separation by the act of the spouse seeking alimony induced by the misconduct of the other spouse. Although, as we have seen, the complaint merely alleges that "for the past several weeks this defendant has failed to support his wife contrary to" the cited statutes, and that "the petitioner and his family may become a charge on the City of Newark," the judgment of conviction recites that defendant was tried on a complaint charging in the disjunctive desertion and willful refusal or neglect "to support his family, in accordance with the provisions of" *R. S.* 9:6-1, *et seq.,* and "contrary to" *R. S.* 9:18-14 and *R. S.* 44:1-1, *et seq.,* and was found guilty of "constructive desertion" of his wife. The marriage was childless.

The conviction is not sustainable under any of the statutes upon which it is rested in the judgment itself. Section 9:6-1, *et seq.*, defines and renders punishable abuse, abandonment, cruelty and neglect of a child. Section 9:18-14, as amended, invests the Juvenile and Domestic Relations Courts with jurisdiction, *inter alia*, to hear and determine complaints for the violation of certain enumerated statutes and "any other laws or future enactments covering similar complaints or offenses, where the gravamen of the complaint under such laws or enactments is the failure or neglect of one member of the family to satisfy or discharge his legal obligations to another of a family," and "to hear and determine in a summary manner disputes and complaints involving the domestic relation and * * * order the adequate support of the spouse, child, children or the entire family and * * * to provide by appropriate order for their support and maintenance." Section 44:1-143 empowers the court to order payment of suitable support and maintenance by a husband or father who "shall desert" his wife or children "and leave them or any of them as public charges." And section 44:1-147, although not phrased with technical nicety, classifies as a disorderly person, liable to imprisonment, a husband or father who "shall willfully desert" his wife or children and "shall refuse or neglect" to maintain a "person so deserted or neglected."

Plainly, the statute has in view actual abandonment or desertion and a failure of support as jurisdictional prerequisites in a wife's action for alimony. *Hiers* v. *Hiers, supra; Van Keegan* v. *Juvenile and Domestic Relations Court of the County of Bergen, supra; Gerish* v. *Bergen County Court of Juvenile and Domestic Relations,* 135 *N. J. L.* 485. The finding of "constructive desertion" was not enough. We have no way of knowing what the judge had in mind as the constituent elements of desertion of this class. The wife testified: "He [her husband] forced me out. He wouldn't give me any money unless I went out." And in the course of the hearing below, she spurned her husband's plea for a resumption of cohabitation because it would make her life "miserable." Indirect desertion in the sense of a termination of

cohabitation by the misbehavior of one of the spouses is not within the statutory category.

The judgment is reversed, but without costs.