47 N.J. Super. 141 (1957)
135 A.2d 535
JULIA J. CAHEN, PLAINTIFF-RESPONDENT,
v.
DR. RAYMOND CAHEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1957.
Decided October 21, 1957.
*142 Before Judges CLAPP, JAYNE and HUGHES.
Mr. Scott M. Long, Jr., argued the cause for appellant (Messrs. Long & Oram, attorneys; Mr. George S. Oram, on the brief).
Mr. Jacob R. Mantel argued the cause for respondent.
The opinion of the court was delivered by HUGHES, J.A.D.
Marital discord generated by differences of opinion as to the management of household finances, a not unfamiliar phenomenon, brought *143 the present litigation before the juvenile and domestic relations court, and this appeal is taken from its order of April 5, 1957 requiring defendant-appellant to pay $100 a week for the support of his wife and child. The learned court predicated its order upon the jurisdiction supposedly possessed by it under N.J.S. 2A:4-18, and in apparent reliance upon the decision of this court in Mattox v. Mattox, 43 N.J. Super. 111 (App. Div. 1956). The latter ruling broadly and properly, we still are convinced, construed that statute in such manner as to equate with the conceptual term "desert" a willful failure to provide food, or other basic necessities of life over and above mere shelter, the parties living together in the same household. In this respect, the court distinguished other more conventional connotations of the terms desertion (N.J.S. 2A:34-2), abandonment and separation (N.J.S. 2A:34-24).
The statute, under which the instant complaint was framed, reads:

"2A:4-18. Concurrent jurisdiction; contempt.
The juvenile and domestic relations court shall also have jurisdiction concurrently with such other courts as may have jurisdiction over the matter, to hear and determine in a summary manner disputes and complaints:

* * * * * * * *
e. Involving the domestic relation, where a husband or father deserts his wife or child even though they continue to live in the same household, in which case the court may order adequate support of his wife, child or family. * * *"
Although the appeal directs our attention to many other factors, we need but consider the factual record for purpose of decision, for its analysis displays a misconception clearly invalidating the order appealed from. The complaining wife lived with her husband and their 12-year-old daughter in a home jointly owned by these adult parties, and of the value of about $27,500. The husband, employed in an executive capacity with a large industry, earned $15,000 per year, having progressed during the past several years, in intermediate stages, from previous earnings of *144 $12,000 per year. When purchasing the home in 1949 a mortgage of $10,000 was necessary, which has since been reduced to $300. Aside from contributions amounting to about $1,000 by the wife incident to the purchase and improvement of this property, the providence and industry of the husband apparently have resulted in its being practically freed of mortgage indebtedness at the present time. Additionally, he carries $20,000 of life insurance, the beneficiaries being his wife and daughter, and has accumulated some $8,000 in investments producing an annuity income of several hundred dollars a year. The testimony indicated that aside from his personal expenses, his fixed cost for the running of the household and for the reduction of the mortgage indebtedness approximated $650 a month. The testimony is in some confusion as to his net monthly income after taxes, which apparently is somewhere between $800 and $900. The wife does part-time teaching several hours a week and the monthly income of approximately $100 is retained by her for her personal use.
This husband was accustomed to pay all family expenses directly except that beginning in April 1954, he handed his wife $200 each month, from which she was to pay for food, telephone and a maid, or domestic helper, for one day a week, the residue representing her incidental expenses. This amount was increased to $220 in November 1956. Additionally, it was testified that he would give her money for extraordinary expenses such as hairdressing, shoe repair and the like and he also maintained charge accounts in a number of local stores and New York stores for clothing. In December 1956, when he took over the payment of household expenses intended to be covered by the $220 previously mentioned, on the supposition that he could effect general economies, he opened a charge account at a local food market, and he testified that for the four months of such experimentation he had held these household expenses to an average of $162 per month. Additionally, the evidence of both parties was in agreement that during that interval he had given his wife, by way of "allowance," sums varying *145 from $25 to $40 per month. The appellant testified with emphasis that since the date of his marriage to the present time, he has been entirely willing to provide reasonable and proper support for his family. It is apparent that the militant attitude taken by him with respect to household expenses reflects an attitude of frugality typified by his testimony that "I want to save at least ten per cent; yes. And I feel that way because I have a sense of responsibility for the future."
While the testimony of the wife indicated friction as to expenses, it appeared that her part-time teaching, apparently not burdensome, was a matter of personal choice with her, as well as a device to relieve the pressure of such discord. Despite vague references to her need for "courage" in broaching the subject of her wish for specific clothing, for instance, she admitted flatly that during the four months of the husband's stewardship, "* * * He paid for all the food bills and he paid for any bills from the stores, merchandise and so forth." The close analysis which we have made of the whole of this testimony, to consider its alignment with the factual findings of the court, has disclosed no instance, even remotely, of an actual or intended deprivation of any of the necessities of life to this wife and child. The learned trial court apparently felt that the parties were "separated" in some manner approximating a constructive desertion, even though they were still living in the same household. We apprehend no basis whatever in the proofs for such conclusion, except a possible misunderstanding of testimony by the husband that his income tax was high "* * * because my wife and I are separated." This witness had some difficulty in expressing himself because of language inadequacies and in context it appears that this reference arose from the fact that he and his wife made separate and not joint income tax returns. From all that appears from the evidence, these parties, even at the time of hearing, were living in a marital relationship in the fullest sense, despite their discordant views as to family finances.
*146 It was, therefore, an erroneous view of the sweep of the Mattox decision which led the court to enter the order appealed from. A re-examination of our opinion in that case assures us of its proper extension of the connotative force of the word "deserts" in the statute under consideration, to extend to a concept of willful abandonment, i.e., "desertion" of a duty of support. Conceding that the meaning of the statute was not free of doubt, this court there depended upon the view that the Legislature, in amending it (L. 1950, c. 337, p. 1117, § 1) had intended through the clause above mentioned to overcome the effect of the rule of DeSena v. DeSena, 4 N.J. Super. 379 (App. Div. 1949), in which a support order originating in the juvenile and domestic relations court was invalidated because the parties resided in a common household and, as had been determined in Frank v. Juvenile and Domestic Relations Court of Essex County, 137 N.J.L. 364 (Sup. Ct. 1948), the statutes then in effect had in view an actual abandonment or desertion, as well as a failure of support, as jurisdictionally prerequisite to the granting of such relief.
In restating the Mattox conclusion that a willful failure to provide food or other basic necessities of life justifies an award of adequate support under clause (e) of N.J.S. 2A:4-18, supra, because justly classified thereunder as an abandonment or "desertion" of such duty, we are even more convinced by considerations of public policy affecting the family, which have not lessened in the interim in their import to the common welfare. Vide R.R. 4:94A (adopted June 20, 1957, to be effective September 4, 1957); Reports of New Jersey Supreme Court's Committee on Reconciliation (1956, 1957); Reports of New Jersey Supreme Court's Committee on Juvenile and Domestic Relations Courts (1956, 1957). We repeat our view expressed in the Mattox case that this clause was intended to provide "* * * legal machinery for furnishing a wife with support, without requiring as a condition precedent such a disintegration of the marital relation that the parties *147 have separated" and that "* * * redress in such a case is properly intrusted to a court, such as a Juvenile and Domestic Relations Court, which was designed, not so much to dispose of controversies inter partes, as to serve society's interest in the parties' welfare  in this case, to preserve the family," the basic unit of all human society.
Since the evidence taken in the trial of the issue here in no way accommodated the determination that a basic duty of support had been abandoned, such as to bring the case within the reach of the Mattox principle, the order appealed from was without basis in law and must be set aside. As broad as may be considered the court's jurisdiction to intervene in protection of the family when its support is withdrawn, we cannot conceive that it may be called upon under the statute in question to referee differences of opinion as to the handling of domestic finances in the manner here suggested. In considering the appalling weight of litigation which thereby would be agitated, a different view would lead not only to the disintegration of the family, but of the court system itself.
An ancillary order, appointing a sequestrator of certain assets of the defendant-appellant, was entered in view of the suggestion that since the entry of the order under review he has transferred his residence to France and is no longer resident with his family. The dissolution of such order should await the issuance of the mandate hereunder, which will permit sufficient time for the plaintiff-respondent to take whatever appropriate action is deemed necessary for her protection under the circumstances as they now exist.