118 N.J. Super. 203 (1972)
287 A.2d 14
NEW JERSEY STATE BAR ASSOCIATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
NEW JERSEY ASSOCIATION OF REALTOR BOARDS, A CORPORATION OF THE STATE OF NEW JERSEY, ET AL, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 25, 1972.
*204 Mr. Emanuel Honig for plaintiff.
Mr. Arthur M. Greenbaum for defendants (Messrs. Greenbaum, Greenbaum, Rowe & Smith, attorneys.)
STAMLER, J.S.C.
Defendant New Jersey Association of Realtor Boards (hereinafter "Realtors") moves for an order disqualifying the Chancery Division judge in Vicinage 2 "and other judges of the State of New Jersey similarly situated from hearing this cause, pursuant to R. 1:12-2 and the general inherent equitable powers of the court, on the ground of the existence of bias and prejudice precluding a fair hearing and judgment or on the ground that defendants and the general public might reasonably believe that there exists such bias and prejudice; and appointing an impartial panel of lay arbitrators to hear and decide this cause."
Defendant, on oral argument, defined "similarly situated" to embrace all trial and appellate judges, including the Chief Justice and Associate Justices of the Supreme Court of New *205 Jersey and the Chief Justice of the United States and the Associate Justices of the Supreme Court of the United States.
The Supreme Court in State v. Bander, 56 N.J. 196 (1970), said:
This opinion is not to be understood to mean that what defendant here did, does not constitute the practice of law or that such conduct by one not a member of the Bar of this State is authorized or condoned by this Court. The question of whether defendant's acts amounted to the unauthorized practice of law was partially explored at the oral argument of the matter sub judice. It developed that the problem has so many ramifications that it could not be intelligently considered on the present record. As to that issue it is suggested that an answer might be obtained in a separate suit for an injunction against the type of acts undertaken by defendant or for a declaratory judgment. In this manner a complete and detailed record could be made disclosing, inter alia, the extent, length of existence, effect and result of the performance of similar acts by real estate brokers generally and the public need for such service. The Court could then give a valued and intelligent reply to such an inquiry. [At 202; emphasis supplied]
On August 20, 1971 plaintiff New Jersey State Bar Association (hereinafter "Bar") filed a class action against Realtors demanding injunctive relief from acts of defendants alleged to constitute the practice of law, preparing or executing legal instruments or arguments, advising third persons on legal questions, and declaring what services, conduct or practices constitute the practice of law. Plaintiff further requests the promulgation of court rules to prevent what is alleged to be the unlawful practice of law by realtors. An answer was filed and shortly thereafter came this motion.
Although there are many cases which consider the disqualification of individual judges for prejudice or bias, the relief here sought by defendants is without precedent, with possibly one exception. In Alamo Title Co. v. San Antonio Bar Ass'n, 360 S.W.2d 814 (Tex. Civ. App. 1962), a local bar association sought to enjoin a title insurance company from preparing certain legal instruments in real estate transactions. There the attack was directed at the trial judge. The court said:
*206 It is insisted the trial judge was disqualified because of membership in the State Bar of Texas, a party to the suit. The contention is overruled. Art. 5, Sec. 7 Texas Constitution, Vernon's Ann St.; Art. 320a-1, Sec. 3, Vernon's Ann. Tex. St.; Hidalgo County Water Improvement Dist. No. 2 v. Blalock, 157 Tex. 206, 301 S.W.2d 593, 597. To sustain it would be to hold no State tribunal could exist in this case. Equity will not suffer a wrong to be without a remedy. [At 817]
Within the scope of the present disqualification motion are appellate judges at all levels, state and federal. Defendants suggest a "tribunal" of lay arbitrators, from whose decision there could be no appeal to any other forum.
In this controversy there is an encounter between two professions. In the final analysis the resolution must be based solely on consideration of the public need and interest rather than the parochial interests of either party. With this as the polestar, on this motion there is no necessity to review the history of the conflict between the two groups. This may be relevant when the matter is ultimately considered on the merits somewhere by a judge or other duly appointed adjudicators. The motion only requires a determination of disqualification of all judges and the propriety of appointing a lay board in substitution.
To ask a trial court to order the disqualification of the Chief Justice of the United States and the Chief Justice of New Jersey truly boggles the mind. The judicial oath taken by this court does not permit it to shrink in fear or alarm. The motion must be decided. It cannot be avoided.
It is not asserted that any one judge is more or less disqualified than any other. Defendants make no direct allegation of bias or prejudice directed at this court or at any specific judge or judges. All are said to be contaminated in the same way: All New Jersey judges are required by our Constitution (N.J. Const. (1947), Art. VI, § VI) to have been admitted to the bar; therefore, say the realtors, some of its members and the public generally might reasonably believe that there is an appearance of impropriety.
R. 1:12-1 (f) provides:

*207 Cause for Disqualification; On the Court's Motion

The judge of any court shall disqualify himself on his own motion and shall not sit in any matter, * * * when there is any * * * reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead * * * the parties to believe so.
The Canons of Judicial Ethics adopted by the American Bar Association (N.J. Court Rules (1969), Appendix to Part I (1971)), and expressly applicable to all judges of this state (R. 1:14), state in pertinent part:

Avoidance of Impropriety
A judge's official conduct should be free from impropriety and the appearance of impropriety * * *. [Canon 4]

Kinship or Influence
A judge * * * should not suffer his conduct to justify the impression that any person can improperly influence him or unduly enjoy his favor, or that he is affected by the kinship, rank, position or influence of any party or other person. [Canon 13]
The concept of the rule of law is grounded in the confidence of the public as well as litigants in our legal system and the reasonableness of its rules, and in the ability of its judiciary to render fair, just and impartial determinations. In State v. Deutsch, 34 N.J. 190 (1961) the Supreme Court of New Jersey has stated:
It is vital that justice be administered not only with a balance that is clear and true but also with such eminently fair procedures that the litigants and the public will always have confidence that it is being so administered. See Frankfurter, J., in Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11, 16 (1954): `justice must satisfy the appearance of justice.' To that end judges must refrain * * * from sitting in any causes where their objectivity and impartiality may fairly be brought into question * * *
[T]here is a significant trend * * * towards recognition of a basis for disqualification where, in the eyes of the litigants and the public, the circumstances call justly for the judge's withdrawal.
`The proper administration of justice, and respect for the courts, depend * * * upon the intrinsic integrity, fairness and impartiality of the judges, * * *. [I]t is * * * their duty to scrupulously refrain from sitting in any case, or under any circumstances, which might reasonably tend to give rise to doubt or suspicion as to their complete disinterestedness.' * * *
*208 * * * `human frailty is not always overcome by trained judicial habits of impartiality' * * * `It is imperative we maintain the confidence of the public in our system of justice * * *' [At 206-209; citations omitted; emphasis supplied]
Defendants rely heavily upon Summer v. Teaneck Tp., 53 N.J. 548 (1969). There the Supreme Court considered a situation in which an administrative agency comprised of members of a certain profession was authorized by law to regulate that profession and, at the same time, act as a guardian of the public interest. In that case Chief Justice Weintraub said:
* * * a commission recruited exclusively from the membership of a profession or occupation is hardly the appropriate guardian of the whole public interest. It is one thing thus to enable an interested group to elevate the standards of fitness and performance in its specialty. It is something different to depend upon the interested group to give the public * * * protection. [At 557]
That case is readily distinguishable. There the court was describing the obligations of an administrative board created by the legislative branch and appointed by the executive. Here we are concerned with a branch of government created by the Constitution of New Jersey. Art. IV, § I vests the judicial power of the State in the courts. Art. VI, § II provides that the Supreme Court shall exercise appellate jurisdiction in all causes encompassed in the Constitution. This repose of judicial responsibility is an attribute of sovereignty. James H. Rhodes & Co. v. Chausovsky, 137 N.J.L. 459 (Sup. Ct. 1948). It is immune from legislative change. Frank v. Juvenile and Domestic Relations Court, 137 N.J.L. 364 (Sup. Ct. 1948).
It would be a simple solution to retreat from judicial responsibility and ask others to undertake this important constitutional obligation. The judicial oath solemnly promises that a judge or justice of our courts will support the Constitutions of this State and of the United States and that he will perform his judicial duties faithfully, impartially and justly, to the best of his ability.
*209 There is a constitutional limitation upon the right or duty of judges to disqualify themselves. Disqualification must yield to necessity where to disqualify would destroy the only tribunal in which relief could be had and thus preclude determination of the issue. In such case it has been held, consistently, the court must act no matter how disagreeable its task may be. Traction Co. v. Board of Public Works, 56 N.J.L. 431 (Sup. Ct. 1894); Zober v. Turner, 106 N.J.L. 86 (E. & A. 1930); Shibla v. Township Committee of Wall Tp., 136 N.J.L. 506 (Sup. Ct. 1948), aff'd 137 N.J.L. 692 (E. & A. 1948). In other jurisdictions the same principle has been enunciated. See: Evans v. Gore, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1919); Marquette Cement Mfg. Co. v. Federal Trade Comm'n, 147 F.2d 589 (7 Cir.1945); Moulton v. Byrd, 224 Ala. 403, 140 So. 384 (Ala. Sup. Ct. 1932); Federal Construction Co. v. Curd, 179 Cal. 489, 177 P. 469 (Cal. Sup. Ct. 1918); Wheeler v. Fargo Consolidated School Dist., 200 Ga. 323, 37 S.E.2d 322 (Ga. Sup. Ct. 1946); State ex rel. Mitchell v. Sage Stores Co., 157 Kan. 622, 143 P.2d 652 (Kan. Sup. Ct. 1943); State ex rel. Gardner v. Holm, 241 Minn. 125, 62 N.W.2d 52 (Minn. Sup. Ct. 1954); State ex rel. Null v. Polley, 34 S.D. 565, 138 N.W. 300 (S.D. Sup. Ct. 1912); Alamo Title Co. v. San Antonio Bar Ass'n, supra.
As the court stated in Traction Co. v. Board of Public Works, supra:
This rule which excludes the interested judicial officer is subject to one exception. This exception arises when there is no one else to perform the duty, for it is clear that, while the performance of a judicial duty by an interested officer may occasion a failure of justice, yet it is equally clear that the disqualification of the only person who can adjudicate strips suitors of their ability to pursue their legal rights at all, and so must result in a failure of justice. [56 N.J.L. at 439]
Chief Justice Marshall in Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 5 L.Ed. 257 (1821), in expressing his concept of the judicial obligation and judicial power said:
*210 It is most true that this court will not take jurisdiction if it should not; but it is equally true, that it must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur which we would gladly avoid, but we cannot avoid them. All we can do, is to exercise our best judgment, and conscientiously to perform our duty. [At 404]
It may be some comfort to describe to the fearful realtors what lawyers, including members of plaintiff association, believe is the shortest interval of time known to man: that fleeting moment when a lawyer takes his oath as a judge and immediately forgets that he was ever a lawyer.
If it is assumed that the broad disqualifying order could be entered notwithstanding the suggestion in Bander, supra, where then would parties have their differences resolved? If the courts are powerless to perform the judicial function, disputes may be decided in the streets by picketing, chanting and shouting to express disagreement, letting the loudest or most vociferous be the decision makers. The realtors do not want this but do suggest a junta of laymen appointed by this court. They suggest that the power to make such appointments and to require binding arbitration may be found in R. 1:1-2, which provides:

Construction and Relaxation
The rules in Part I through Part VII, inclusive, shall be construed to secure a just determination, simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay. Unless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice. In the absence of rule, the court may proceed in any manner compatible with these purposes. [Emphasis added]
It is the last sentence to which defendants direct attention. No other authority is cited.
*211 This rule does not give any substance to the suggestion of defendants. It may permit "construction" or "relaxation" of the rules of court. However, the return to even a semblance of undesirable "special master" procedures is not only abhorrent to our court rules but would be an attempt by the courts to abdicate the judicial responsibility imposed by our Constitution. The Constitution does not permit this court to decline to exercise the judicial function or to delegate it elsewhere.
No matter what theory of judicial disqualification is advanced, there can be no disqualification of the entire judicial system. To do otherwise would contravene and erode our Constitution.
Motion denied.