## CABOT BANK; APPEAL FROM PROBATE.

Certain decrees of a probate court in the settlement of the assigned estate of S. were appealed from on the ground that B. who was judge of the court, was disqualified by interest. B. at the time and for some time before was administrator of the estate of one C. and as such had contracted with S. before his failure, to convey to him a piece of land belonging to the estate on his paying $2,500. S. gave his note at bank therefor, including in it a further sum

due to C's estate for lumber bought of B. as administrator, the note being made payable to the order of B. who endorsed it and got it discounted, applying the avails to the payment of C's creditors. When the note was about falling due, S. being unable to pay it in full, B. advanced him $1,250 for the purpose out of the funds of the estate, it being agreed that the land contracted for should not be conveyed till the money so advanced was paid, and B. relying wholly on the security thus retained in making the advance. S. soon after made an assignment for the benefit of his creditors. Held, that B. was personally interested in the estate of S. and by such interest disqualified to act as judge in making the decrees appealed from.

Held also, that aside from the consideration of personal interest, the relation of administrator to the estate of C. involving an obligation to act for the interest of that estate, would have made it improper that he should sit as judge in a matter in which that estate was interested.

THIS was an appeal to the superior court from sundry decrees of the court of probate of the district of East Windsor, in the settlement of the estate of Bezaleel Sexton, an insolvent debtor, assigned for the benefit of his creditors. The appellant assigned as the reason of appeal that William Barnes, Esq., the judge of said court of probate, by whom the decrees appealed from were made, was interested as a creditor in said estate, and so disqualified to act as such judge.

The case was referred to a committee, who reported the following facts:

From the first day of January, 1852, to the first day of January, 1854, during which period all the decrees in question were made, William Barnes, Esq., was judge of probate for said district, and as such made the decrees. In 1849, one J. B. Chapman, of said district, died, leaving real and personal estate, and Mr. Barnes was appointed administrator thereof, and so continued during the aforesaid period. Previous to the death of said Chapman, said Sexton purchased lumber of him, and afterward purchased other lumber belonging to his estate, of Mr. Barnes as administrator, amounting in all to about $580, which was due and unpaid on the first of July, 1852. In the spring of 1852, Sexton contracted with Mr. Barnes as administrator, for certain real estate belonging to said Chapman at his death, at the price of $2,500; the land not to be conveyed till paid for by Sexton. On the 1st

day of July, 1852, Mr. Barnes took of Sexton two notes payable to himself at the Phœnix Bank, but solely for the use and benefit of said Chapman's estate, one for $1,571.17, payable at three months; the other for $1,578.92, payable at four months, which notes were made payable to him, to enable him to get them discounted with more facility as business notes. They embraced the amount due for the lumber and the real estate. The notes were discounted, and the amount received therefrom distributed among the creditors of said Chapman. When the note first payable fell due, it was not convenient for Sexton to pay it in full, and Mr. Barnes, from the funds of the estate then on hand, advanced him $1,250 for the purpose, it being understood between him and Sexton, that the land contracted for was not to be conveyed till the $1,250 was repaid. He took no note or receipt or other evidence of indebtedness from Sexton, and made no charge of the money, but relied solely on the land as security therefor.

The other note was paid by Sexton at maturity, and before the making of his assignment, and though no specific application was made of either note to cancel the debt for lumber, it was the understanding of both parties at the time the last mentioned note was paid, that everything was settled between the estate and Sexton, except the $1,250, which was to be paid before the land should be conveyed. Sexton made an assignment of his property for the benefit of his creditors, on the 18th day of December, 1852, at which time one Benton executed a bond to him, in the penal sum of $30,000, conditioned that he would assume and pay sundry debts owed by Sexton, and among them the said $1,250, described in the instrument as an indebtedness "to William Barnes, in the sum of $1,250, and interest on the same for money borrowed of him." To indemnify Benton, Sexton at the same time mortgaged to him a large amount of property, real and personal, to be held as security, or sold for the payment of the debts enumerated in the bond, the assignment being made subject to the mortgage. Mr. Barnes, during the period he officiated as judge, was not at any time a creditor of said Chapman or his estate. At a subsequent period in the year

1854, the $1,250 was paid by Benton, from the property of Sexton, and the real estate contracted for was conveyed by Mr. Barnes as administrator, to certain persons agreed on, for the benefit of Sexton's creditors. During the settlement of the Chapman estate, Mr. Barnes kept a deposit account in his own name at the bank, where he deposited his own and the funds of the estate indiscriminately, and drew his own check on the bank for the $1,250, when he advanced the same to Sexton, more than that amount belonging to the estate being then on deposit in the bank. The report was accepted, and the questions arising thereon reserved for the advice of this court.

*Goodman* and *L. F. Robinson*, for appellants.

1. The judge of probate who made the decrees appealed from was interested in the estate of Sexton and was therefore disqualified to act. Rev. Stat. tit. 4, sec. 59. The extent of that interest is not material. He was interested as creditor, either in his own right or as administrator upon the estate of Chapman. We say in his own right. The report finds that he had sold Sexton some personal property belonging to the estate. The amount of that was included in the notes of Sexton dated July 1st, 1852. The notes were made payable to his own order, and discounted for him and on his indorsement. He had collected money of the estate and deposited it in the bank in his own name, and with his own money, thus making it his own. He was personally liable for the property sold. *Foster* v. *Thomas*, 21 Conn., 285. If the money was advanced from Chapman's estate it would not make any difference. By lending the money of the estate without security he made the debt his own. The money in the bank could have been attached as his money. It went to pay Sexton's notes, and when they were paid he could have compelled a conveyance of the land. *Coburn* v. *Ansart*, 3 Mass., 319. If he had taken a note for the money it could have been sued in his name. *Merritt* v. *Seaman*, 6 Barb., 330. All personal estate vests in the executor or administrator. If a suit is brought it must be in his name.

If the property is sold on credit the debt is due him.  In an action of debt on judgment recovered by him as administrator, he need not declare as administrator.  *Biddle* v. *Wilkins*, 1 Pet., 686.  *Talmadge* v. *Chapel*, 16 Mass., 71.  He may sue in his own name for goods taken.  *Patchen* v. *Wilson*, 4 Hill, 57.  *Gage* v. *Johnson*, 20 Maine, 437.  The statute, (Rev. Stat. tit. 14, § 54,) directs that two disinterested and judicious freeholders may be appointed. commissioners upon insolvent estates.  In *Stoddard* v. *Moulthrop*, 9 Conn., 502, it was held that where one of the commissioners was a brother of the insolvent, he was disqualified, and in *English* v. *Smith*, 13 Conn., 221, that where one was a son of the other, or tenant of a stockholder in a bank that was a creditor, he was disqualified.

2. Benton gave Sexton a bond that he would pay Mr. Barnes $1,250, and Sexton gave Benton a mortgage of property to secure him for paying it.  Mr. Barnes was, therefore, interested in the estate of Sexton to that amount.  He was beneficially interested as much as if the mortgage had been made directly to him.  *Hawley* v. *Baldwin*, 19 Conn., 585. *Sigourney* v. *Sibley*, 21 Pick., 101, 105.  *Pearce* v. *Atwood*, 13 Mass., 324.  If the claim had been disputed by creditors, and a complaint had been made against Mr. Barnes for concealing Sexton's property, he as judge could not have tried that question, nor could he appoint commissioners to decide whether the claim was due or not.

3. If a suit had been brought to enforce this claim, Mr. Barnes would have been a party to the record, and at common law could not have been a witness to support the claim. *Fox* v. *Whitney*, 16 Mass., 118.  *Vansant* v. *Boileau*, 1 Bin., 444.  *May's Ex.* v. *Cowman*, 3 Har. & McHen., 152. *Lock* v. *Noyes*, 9 N. Hamp., 430.  *Dial* v. *Crain*, 10 Texas, 444.

*Hungerford* and *Wright*, for appellees.

1. It is claimed that Mr. Barnes, by giving time on the debt due for lumber, and by selling lumber as administrator, made the debt his own.  *Foster* v. *Thomas*, 21 Conn., 285. We answer that though no specific application was made of

the amount of the second note paid in full, and that part of the first note which was paid, yet he could make division of the funds and apply enough to cancel the lumber debt. 1 Swift's Dig., 299, and cases there cited. An administrator can make the same application as an individual, and the committee finds that such application was in fact made.

If, therefore, Mr. Barnes ever became interested by means of credits given for the lumber debt, such interest was removed by payment of that debt before the failure of Sexton.

2. The interest of Mr. Barnes in the notes given for the sale of the real estate, did not disqualify him. Though he had not made the debt his own by a conveyance of the real estate before it was paid for, yet it is claimed, that as Sexton gave his notes for the land, and a part was not paid, he was in consequence indebted to Mr. Barnes as administrator, and that the latter is thereby interested in the estate. But an administrator has not such an interest as to disqualify him to act as judge. Rev. Stat., tit. 4, sec. 59. At common law an executor or trustee may be a witness in a cause in which the estate which he represents is interested. *Comstock* v. *Hadlyme Eccl. Society*, 8 Conn., 254. *Middletown Sav. Bank* v. *Bates*, 11 id., 519. *Sears* v. *Dillingham*, 12 Mass., 358. *Bettison* v. *Bromley*, 12 East., 250. *Goodtitle* v. *Welford*, 1 Douglas, 134. *Cottle, appellant*, 5 Pick., 483. *Sigourney* v. *Sibley*, 21 id., 101. *Vansant* v. *Boileau*, 1 Bin., 444. And he is allowed to be so solely on the ground that his interest is representative, and not personal. The legislature did not intend to put assigned estates, as to the disqualification of judges, on a different footing from those of decedents. Rev. Stat., tit. 4, secs. 59, 78. Sec. 78 disqualifies for personal interest, and the same is intended in sec. 59. To attach any particular force to the word "otherwise," in sec. 59, would be to introduce a new disqualifying cause. All disqualifying acts or laws are for personal interest. *Henry* v. *Tilson*, 17 Verm., 479.

3. It is claimed that he loaned the funds of the estate, and therefore made the debt his own. But he could not have

loaned Sexton the money to take up notes taken in payment for the land sold, for they were not so received. The notes were given for the convenience of the estate, and were discounted for its benefit. So that the transaction was one where the price of the real estate was made available for the time being to pay creditors, and the amount replaced from the estate funds at a subsequent time. The administrator had a right to sell on time if he did not convey. *Foster* v. *Thomas*, supra. Suppose that Mr. Barnes had been removed from the administratorship, and should account to his successor, could he be made liable for a devastavit for not handing over the amount of this $1,250? Certainly not, if the real estate was unsold and passed over to his successor. This would be a sufficient accounting. *Foster* v. *Thomas*, supra. This shows that he had not made the debt his own.

ELLSWORTH, J. We think William Barnes, Esq. was so interested in the settlement of Mr. Sexton's estate that he was disqualified from acting as judge in the matter of the orders and decrees appealed from.

Before the assignment of Mr. Sexton was made, which was on the 18th day of December, 1852, Mr. Barnes had received from him two notes of hand, made payable to himself or order, one for $1,571.17, and the other for $1,578.17, both of which said Barnes indorsed, and caused to be discounted at the Phœnix Bank. The last note Mr. Sexton took up before he assigned, but the other, when it was about becoming due at the bank, he informed Mr. Barnes he could not pay without assistance, and Mr. Barnes advanced to him $1,250, with which, and the balance from his own means, he took up the note at the bank. Mr. Barnes, having the legal title to certain land which he was to convey to Mr. Sexton, at a future time, upon certain terms, retained it to secure himself for the repayment of the $1,250.

This was the state of things at the time Mr. Sexton assigned. It further appears, that a short time previous to the assignment, Sexton executed a bond and mortgage of $30,000 to Nelson K. Benton, to secure, among other debts,

the said debt of $1,250 to Mr. Barnes. The property mort-gaged included the property afterward assigned by Sexton. In February and March, 1854, the trustee paid Mr. Barnes the $1,250, which was subsequent to the decrees and orders in question.

We are not able to see why, when Mr. Barnes indorsed these notes and got them discounted, he did not assume a personal obligation to the bank, and so when, at Sexton's request, he advanced to him the $1,250, he did not become the proper creditor of Mr. Sexton, and as such, acquire an interest in the property which he mortgaged to secure the repayment. This is the property which was administered upon in the court of probate.

Now unless there be some circumstance which distin-guishes this case from others, it is quite obvious, that Mr. Barnes was in the first instance directly interested in the dis-posal of the estate which was assigned, and in the amount of the debts to be found by the commissioners and allowed by the court. The great effort in the case has been there-fore, to show that there is such a circumstance. And it is this, as urged by the counsel for the trustee, that the $1,250 was really a debt due to the estate of one Chapman, upon which Mr. Barnes had been duly appointed administrator, and was administering, and not to Mr. Barnes as an indi-vidual; and further, that that money was taken from the general funds of the estate, although the account of Mr. Barnes in the Phœnix Bank did not discriminate and show but that he held all that he had deposited in the bank in his individual capacity; and further, that the $1,250 was realized out of the notes which, though made payable to and indorsed by Mr. Barnes, were in truth a portion of the estate of said Chapman. These circumstances do not, we think, constitute a distinction of any importance.

The obligation of Mr. Barnes to pay the bank the note of $1,578.17 was entirely personal, and when he advanced the $1,250 to Sexton to enable him to take it up, Sexton became the debtor of Mr. Barnes, and could have been sued by him for money advanced. The $1,250 standing to Mr. Barnes'

general credit in the bank was his own money, and when he drew it out and gave it to Sexton to be applied on the note in the bank, Sexton owed that money to him and to nobody else. Nor as administrator of Chapman had he a right, except at his own risk, to use the property of the estate of Chapman, if indeed he has done any such thing. Of course we do not question the honesty and fidelity of Mr. Barnes, but only his legal right and authority. Whether in his final settlement of his administration account in the court of probate, he will be able to satisfy the judge, that he has, as administrator, done the best that he could do, and all that he could, and therefore, as it shall turn out, never had, strictly, any personal interest in the settlement of Sexton's estate, or the property in the mortgage to Benton, we have no power to decide. No one can know until the estate of Chapman is settled.

The counsel for the appellees seemed to place this part of their claim upon a principle of law which we can not sanction; that a person has not an interest which will disqualify him to sit as judge or juror, if upon the final settlement of his account as trustee, administrator, or guardian, he can now prove, that he will then be able to render a legal and satisfactory account, and show that he has no ultimate interest. We can not know this, and we must look at the case as it is at this time. Besides, we think that all persons who sustain the fiduciary relations of a trustee, administrator, guardian, and the like, are not sufficiently impartial or disinterested and independent, to occupy the seat of a judge or a juror. All such persons are bound to act for the special benefit of those whom they represent; they must employ counsel, procure proof, urge the claims committed to them, and omit nothing which care, diligence, and devotion will accomplish. Surely such persons are not indifferent.

Other questions we pass over, as we are satisfied, for the reasons stated, that the orders and decrees appealed from must be set aside.

In this opinion the other judges concurred.

Advice that decrees be reversed.