[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs Northeast Financial Management Associates, LLC, (NFMA) and James R. Crozier, III have filed this action alleging libel against the defendant Record-Journal Publishing Company and Eliot C. White.
The plaintiff NFMA is in the business of conducting personal property audits for municipalities. Mr. Crozier is the partner in the firm who supervised the tax audits in Meriden.
The defendant Record-Journal Publishing Company owns the Meriden Record-Journal a daily newspaper of general circulation in Meriden and surrounding towns. Mr. White is the editor and publisher of the newspaper.
In July of 1994, the plaintiff NFMA contracted with the City of Meriden to audit its taxation of personal property.[1]
Taxpayers are responsible for self-reporting. Underreported personal property results in underpayment of tax. The role of NFMA was to obtain certain income tax schedules and other documents from the taxpayer on which personal property might be reported and to compare those documents with the personal property report to the municipality. NFMA's contract provided that the city compensate the plaintiffs on a contingency of 25% of the first $500,000 the city collected in back taxes as a result of the audit.
The defendant newspaper was among 400 randomly selected businesses that were chosen by the city for the first round of audits. The defendant newspaper was sent a notice dated September 5, 1994, to supply certain documents related to their personal property tax for the years 1991, 1992, and 1993. After documents were supplied, a series of meetings occurred, attended by representatives of the plaintiff and by accountants for the defendant newspaper, which resulted in a determination by the plaintiffs that the defendant owed back taxes. The defendant appealed, first to the City of Meriden's Board of Tax Review, and, losing there on March 30, 1995, to the Superior Court. The appeal to Superior Court was withdrawn when an out-of-court settlement was reached at some point in 1996. CT Page 3779
The plaintiffs' audit method and fee arrangement had been the subject of controversy elsewhere. On July 14, 1994, the New HavenRegister reported on a lawsuit between NFMA and the City of New Haven in which NFMA was attempting to collect $3.4 million due on its contingency fee contract. A recommendation had been made within the Office of the New Haven Corporation Counsel to take disciplinary action against former city officials who were responsible for entangling the city in the contract with NFMA.
On April 7, 1995, the Record-Journal reported that a number of Meriden businesses were complaining about the tax audit and felt that the audit had been conducted in an unfair manner. The article disclosed that the Record-Journal itself as well as other city businesses had appealed but lost their appeals before the Board of Tax Review. The President of the Greater Meriden Chamber of Commerce is quoted in the article as criticizing, in particular, the contingency fee arrangement, calling NFMA "a hit team from out of town who is going to get a percentage of what Meriden citizens pay in taxes." Defendant's Exhibit 7.
On May 2, 1995, the Record-Journal reported that it had filed a lawsuit in Superior Court challenging the assessment of back tax. On May 6, another article appeared, reporting that Rex Medical, a Meriden business, had also filed a court challenge to its back tax assessment.
On May 12, the Record-Journal reported on an upcoming meeting between officials of the Chamber of Commerce and "city leaders." The Mayor of Meriden, Joseph Marinen, expressed his concern about the size of the penalties and interest charged to city businesses who were found to owe back property tax. John Quine, Chair of the Business and Legislative Affairs Committee of the Chamber of Commerce, proposed a meeting between the chamber and the Mayor, the City Manager, and Meriden tax officials, to discuss the problem of the audit and "the `attitude problem' of Northeast." Defendant's Exhibit 10.
On May 14, 1995, the Record-Journal published the writing that is the subject of this lawsuit, reproduced in full as an appendix to this memorandum of opinion. The writing appears on a page labeled EDITORIALS underlined in capital letters. It takes up about 20% of the space on the page. It is beneath the headlineAudit was fine; the method was not, and the byline contains the author's name, Eliot C. White, Publisher. Also on the page are two opinion pieces on motherhood (pro), an opinion piece on a CT Page 3780 city contract scandal (con), and a cartoon lampooning U.S. Trade Negotiator Micky Kantor.
The writing describes the contingency fee arrangement and theRecord-Journal's own audit by NFMA, the assessment of additional tax, the unsuccessful appeal to the Review Board, and the subsequent lawsuit. The writing uses the following terms about NFMA and James Crozier: capricious, unprofessional, adversarial,anti-business, arbitrary, unfair, attitude of . . . guilty untilproven innocent, unprofessional (again), evasive, uncooperative,avoided providing . . . specific information, arrogant,condescending, outright rude, didn't bother to take a walkthrough our building, arrogant (again), abusive, uncooperativewith no room for discussion, (another businessman had) a similarbad experience with (defendants) . . . and found him . . .arrogant and demeaning, unprofessional (yes, again), problems intheir dealings with other cities, antagonistic towardsbusinesses, attitude problem. It concludes with the sentence, "Get rid of Northeast and let our assessor do the work."
On May 25, 1995, counsel for the plaintiffs sent a letter to the defendants, Plaintiff's Exhibit M, complaining about the "editorial"[2] and demanding a retraction. On May 30, the defendants responded by letter through counsel, declining to print a retraction. The defendants invited the plaintiffs to submit their "own opinion piece to the Record-Journal" for publication. Plaintiff's Exhibit N. Thereafter on December 4, 1995, the plaintiffs commenced this action by service on the defendants alleging libel.
Libel is the unprivileged publication of a false and defamatory statement. Letter Carriers v. Austin. 418 U.S. 264,284, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974); Strada v. ConnecticutNewpapers, Inc., 193 Conn. 313, 316 (1984). If such a statement is as to a matter of fact, truth is an absolute defense. Dacey v.Connecticut Bar Association. 170 Conn. 520, 538 (1976). The court must determine as a threshold matter of law whether the allegations are statements of fact or opinion. Goodrich v.Waterbury Republican-American. Inc., 188 Conn. 107, 111 (1982).
The distinction between fact and opinion cannot be made in a vacuum, however. Rather one must look to the context in which the statement is made to determine "whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a CT Page 3781 statement of existing fact." Id., 111-112, citing 1 Harper 
James, Torts, Sec. 5.28, p. 458.
The court finds that all of the statements about which the plaintiffs complain are opinion. If those opinions constitute "fair comment" on matters of public interest, they are privileged as a matter of law. New York Times Co. v. Sullivan. 376 U.S. 254,84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Goodrich v. WaterburyRepublican-American, Inc., supra, 120-21.
The court finds that the Record-Journal was performing its wholly legitimate function as a newspaper in publishing news articles and opinion pieces about a private enterprise whose work affected the public welfare. Id., at 115, citing Mashburn v.Collin, 355 So.2d 879, 882 (La. 1977).
Therefore the published opinions of the defendants are entitled to the privilege of fair comment and are protected under Article First, Sec. 4 of the Connecticut Constitution and theFirst Amendment to the United States Constitution.
The court hereby enters judgment for the defendants.
Patty Jenkins Pittman, Judge
APPENDIXPersonal property tax
Audit was fine; the method was not
By Eliot C. White
Publisher
A number of Meriden businesses are angry at the city of Meriden for the way they conducted the audit for personal property tax. At least two businesses so far, including the Record-Journal Publishing Company, have sued the city in order to appeal the findings. Several others have stated an intent to sue. Some may leave town. A law suit is the only appeal available.
The focus of the frustration by businesses is not the city's decision to audit businesses. They are angry about the capricious and unprofessional manner that the audit was conducted by Northeast Financial Management Associates of Hamden, the firm CT Page 3782 hired by the city. Northeast was hired on a contingency fee based on a percentage of their findings, including interest and penalties. This arrangement established an immediate adversarial relationship between the city and businesses. The Certified Public Accountants' code of professional ethics precludes them from working for a contingency fee. Although Northeast is not a CPA firm, they should be held to similar standards.
This anti-business approach is particularly troubling at a time when the local economy has just barely started to show some life after six very difficult years. The procedure followed by Northeast at the Record-Journal and several other businesses was arbitrary and unfair. The attitude of James Crozier of Northeast was that the businesses were guilty until proven innocent. Assessing penalties further reinforced this attitude. Businesses who have survived the economy ironically are those being targeted.
The procedure followed by the city originally was fair enough to randomly select 400 area businesses with the intent of rotating over a several year period to cover all businesses. However, by hiring a firm on a contingency basis, the city immediately removed itself from the personal relationship with local businesses. A few years ago, verification of personal property of businesses was a matter conducted by the City Assessor's Office. Bob Hallbach would personally verify new equipment that had been added or old equipment that was no longer in use and thus not taxable. He was always friendly, professional and businesslike, a relationship built on fairness and mutual respect.
Audits are a standard part of the tax system. Tax laws are open to debate and interpretation. Audits often find items that have been omitted. They can also find items that are included that no longer should be taxable. Give and take is part of the system. Northeast was unprofessional in the manner they conducted the audit at the Record-Journal. From the summer of 1994, when we were first notified, until our appeal in late March before the Board of Tax Review, Northeast was evasive and uncooperative in providing us with backup information. We have a well documented pattern that they repeatedly avoided providing us with specific information on their findings. Our representatives found Crozier to be arrogant, condescending and outright rude. We should expect better from a company that stands to make $230,000 at taxpayer expense for minimal work. CT Page 3783
About half way through the process we were told we might owe some additional taxes due to a timing difference in our fiscal year and the city's and that we may have omitted some assets that we had listed on our federal tax return. Despite repeated requests, it was not until March 3 that we were told we owed $45,000 including penalties and interest. We still haven't received all the information on the supposed unlisted assets. Most of these assets had been taken out of service, disposed of, and were not legitimately taxable, but Crozier said we had no bill of sale or no IRS form to prove that. He didn't bother to take a walk through our building. Once again, he was arrogant, abusive and uncooperative with no room for discussion. Through the appeal process, George MacLauchlan, a Review Board member, said that the city corporation counsel advised the Board that it did not have the authority to eliminate interest and penalty, but that he would anticipate a reduction in the assessment. He said he had a similarly bad experience with Crozier in his business and found him to be arrogant and demeaning.
Our appeal was denied in total and the only remaining appeal is to sue the City. As the local newspaper, we would not bring attention to ourselves if we did not think we were in the right. I hope that our suit and the uproar from other businesses will force the city to be more even handed. We anticipate owing a small amount of additional taxes due mostly to the timing difference in fiscal years.
Going forward, the city needs to regain the personal touch with local businesses. Why have an unprofessional outside company that has had some problems in their dealings with other cities bring their problems here. This is a firm that has been antagonistic towards businesses and has an attitude problem. Get rid of Northeast and let our assessor do the work.