[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, State of Connecticut, Department of Social Services, Protective Services for the Elderly, (State) in this appeal from Probate Court seeks the appointment of a conservator of the estate and person of Doris DeSantis (DeSantis) a 73 year old woman. The basis for the petition for the appointment of a conservator is that DeSantis, who resides with her daughter and granddaughter, is incapable of handling her affairs[1] and is being abused.
In order to grant the State's petition, the court is required to find that it has proven, by "clear and convincing evidence," that DeSantis "is incapable of managing . . . her affairs . . . [or] incapable of caring for . . . herself . . ." General Statutes § 45c-650 (c). The burden of proof by clear and convincing evidence has its ordinary meaning. "The burden of persuasion, . . . in those cases requiring a showing of clear and convincing proof is sustained if evidence induces CT Page 6171 in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." Dacey v. Connecticut Bar Assn., 170 Conn. 520, 537 (1976). It is a burden that lies somewhere "between the belief that is required to find the truth or existence of the issuable fact in an ordinary civil case, [more probable than not], and the belief required to find guilt in a criminal prosecution, [beyond a reasonable doubt]. Lopinto v. Haines,185 Conn. 527, 534 (1981);
The State has not met this elevated burden in this case. With respect to abuse, those factors upon which the State focuses — the black and blue marks on the face of DeSantis and the fact she gained 20 lbs while in the hospital — standing alone would be sufficient court to conclude that there is clear and convincing evidence that she was being abused. When, however, this evidence is put in the context of the entire case a different conclusion must be reached. Dr. Robert Kinstlinger, DeSantis' physician for many years, reported that she is taking the medication Warfarin, an anti-coagulant to prevent abnormal blood clotting. He wrote "the major side effect of this medication is that it can lead to excessive bleeding and to easy bruising with subsequent black and blue marks. I have seen her several times with black and blue marks, sometimes around the head and face, and evidently various people think that this may be a sign that she is physically abused. I have no way of discerning whether she is being abused or not. When I have questioned her about this, in privacy, without her daughter in the room, she denies it vociferously. Because of the medication she is on, she is entitled to easy bruising and black and blue marks, so there is no way that I could say that these black and blue marks are due to physical assault."[2]
DeSantis was also evaluated by Leo M. Cooney, Jr., M.D., Chief, Section of General Internal Medicine, Yale University School of Medicine. Although not controlling, but neither is it irrelevant, Dr. Cooney found DeSantis has "memory loss and signs of early dementia, . . . [but he did] not believe that she is incompetent . . ."
"The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of fact-finding, is to instruct the fact finder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication. Addington [v. Texas, 441 U.S. 418
(1979)] teaches that, in any given proceeding, the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the CT Page 6172 litigants. Thus, while private parties may be interested intensely in a civil dispute over money damages, application of a fair preponderance of the evidence standard indicates both society's minimal concern with the outcome, and a conclusion that the litigants should share the risk of error in roughly equal fashion. When the State brings a criminal action to deny a defendant liberty or life, however, the interests of the defendant are of such magnitude that historically and without any explicit constitutional requirement they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment. The stringency of the beyond a reasonable doubt standard bespeaks the weight and gravity of the private interest affected, society's interest in avoiding erroneous convictions, and a judgment that those interests together require that society impos[e] almost the entire risk of error upon itself." (Citation omitted in part; internal quotation marks omitted.) Stantosky v. Kramer,455 U.S. 745, 755 (1982).
In the present case, the legislature by requiring proof by clear and convincing evidence that DeSantis is being abused rather than proof by a preponderance of the evidence has in effect determined that her liberty interests outweigh the risk of an erroneous decision with respect to abuse. It could very well be that DeSantis is being abused but that is a risk that society is willing to accept.
Judgment shall enter in favor of DeSantis.[3]
Berdon, J.